UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES M. MANLEY, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | )   1:16-cv-00249-DBH |
| | ) |
| RANDALL LIBERTY, | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

In this action, Petitioner James Manley seeks relief, pursuant to 28 U.S.C. § 2254, from his state court conviction and sentence on charges of elevated aggravated assault and violation of conditions of release. (Petition, ECF No. 1.) Through his section 2254 petition, Petitioner asserts a claim of ineffective assistance of trial counsel based on counsel's failure to obtain and present sufficient evidence of the victim's prior history of self-inflicted harm, in support of Petitioner's defense theory that the victim caused his own injuries; Petitioner argues that the Maine Supreme Judicial Court, sitting as the Law Court, unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), when it held that counsel's performance was not deficient.[1] (Petition at 57-59.) Petitioner also argues that the Court should conclude, on *de novo* review, that he was prejudiced by counsel's substandard performance. (*Id.* at 73.)

---

[1] Petitioner limits his claim to a legal argument; he does not contest the state court's factual findings, and he does not seek an evidentiary hearing. (Petition, ECF No. 1 at 14.)

The State requests that the Court deny the section 2254 petition. (Response, ECF No. 3 at 9.) After consideration of the parties' arguments, I recommend the Court deny relief and dismiss the petition.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Law Court summarized the facts as follows:

> The charges arose from an incident that occurred on September 19, 2010, at the rooming house where Manley and the victim lived. Early in the evening, Manley and the victim had a verbal confrontation. Later that night, Manley followed the victim into his room and repeatedly stabbed the victim's left arm, left shoulder, and back.

*Manley v. State*, 2015 ME 117, ¶ 3, 123 A.3d 219.

The state court record (ECF No. 4) reflects that Petitioner was indicted in November 2010 on four counts: (1) elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A); (2) violation of conditions of release (Class E), 15 M.R.S. § 1092(1)(A); (3) terrorizing (Class D), 17-A M.R.S. §§ 210, 1252(4); and (4) obstructing report of crime or injury (Class D), 17-A M.R.S. § 758(1)(B).[2] (*State v. Manley*, No. BATSC-CR-2010-00281 (Me. Super. Ct., Sag. Cty.), Indictment at 1-2, Docket Sheet at 2.) A two-day jury trial was held in May 2011; the jury found Petitioner guilty of elevated aggravated assault, but found him not guilty of the charges of terrorizing and

---

[2] The Law Court noted a mistake in the indictment regarding the crime of terrorizing: "The indictment mistakenly states that 17-A M.R.S. § 210(1)(A) (2014) is a Class C crime. The facts in the indictment clearly allege a Class D crime pursuant to section 210(1)(A), not a Class C crime pursuant to section 210(1)(B). Nevertheless, Manley was not convicted of this charge." *Manley v. State*, 2015 ME 117, ¶ 2 n.2, 123 A.3d 219. Title 17-A M.R.S. § 1252(4), which was also cited in the indictment for the offense of terrorizing, states in part: "If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be." The terrorizing charge is not at issue in Petitioner's 28 U.S.C. § 2254 action.

2

obstructing a report of crime or injury. (Judgment and Commitment at 1, Docket Sheet at 4.) Petitioner pled guilty to the charge of violation of his conditions of release. (Judgment and Commitment at 1, Docket Sheet at 4.)

The court sentenced Petitioner to a prison term of 22 years on Count 1 (elevated aggravated assault), with all but 20 years suspended, followed by a term of six years of probation. (Judgment and Commitment at 1, Docket Sheet at 5.) The court also sentenced Petitioner to a concurrent term of six months on the violation of conditions of release conviction. *Manley*, 2015 ME 117, ¶ 4, 123 A.3d 219. (Judgment and Commitment at 1, Docket Sheet at 6.)[3]

In January 2012, the Sentence Review Panel denied Petitioner's request to appeal from his sentence. (*State v. Manley*, SRP-11-473, Order (Jan. 23, 2012).) In May 2012, the Law Court affirmed the conviction. (*State v. Manley*, No. Sag-11-472, Mem-12-45 (May 15, 2012).) Petitioner did not file a petition for a writ of certiorari.

In June 2012, Petitioner filed a state court petition for post-conviction review. (*Manley v. State*, No. BATSC-CR-2012-00089, Post-conviction Petition, Docket Sheet at 1.) Counsel was appointed, the petition was amended, and an evidentiary hearing was held in January 2014. (Docket Sheet at 1-3.) Petitioner raised three issues, one of which is the

---

[3] The judgment indicates that the court imposed a prison term of 90 days on Count 2 for violation of conditions of release. (Judgment and Commitment at 1.) The docket sheet indicates that the term was to be six months. (Docket Sheet at 6.) The Law Court noted that the prison term on Count 2 was six months. *Manley*, 2015 ME 117, ¶ 4, 123 A.3d 219.

3

claim asserted in Petitioner's section 2254 petition.[4]  In April 2014, the Superior Court denied the petition.  (Decision and Judgment at 1, 11, Docket Sheet at 4.)

In September 2014, the Law Court granted Petitioner a certificate of probable cause to appeal.  (*Manley v. State*, No. Sag-14-168, Docket Sheet at 1.)  On appeal, Petitioner argued the ineffective assistance claim he asserts in this matter (i.e., counsel's failure to obtain and present certain evidence regarding the victim).  *Manley*, 2015 ME 117, ¶ 4 n.3, 123 A.3d 219.  In August 2015, followed by a corrected decision in September 2015, the Law Court determined the Superior Court did not err when it found Petitioner had received "reasonably effective assistance," and thus affirmed the decision of the Superior Court.  *Id.* ¶¶ 1, 18.  The Law Court noted the Superior Court's findings of fact, which the Law Court concluded were supported by competent evidence:

> The court made the following findings of fact, which are supported by competent evidence in the post-conviction record. Manley's trial counsel has engaged in the practice of law for more than twenty years with more than half of his practice focused on criminal defense. He has handled thousands of criminal cases, and he has participated in at least thirty criminal jury trials.
>
> For Manley's case, the attorney retained a private investigator to explore various theories of defense, including an alternate suspect theory. Because little support emerged for the alternate suspect theory from the investigator's work, and because the discovery furnished by the State indicated that the victim had some history of self-inflicted injury, the attorney focused his defense strategy on the theory that the victim caused his own injuries. Although the attorney was aware that the victim had received treatment at various hospitals, he was concerned that attempting to obtain the victim's treatment records would alert the State to his strategy. Therefore, the attorney elected to rely on what he had obtained through discovery, and he did not subpoena the victim's medical records.

---

[4] The other two claims Petitioner pursued in the state court post-conviction hearing, but not in later proceedings in the state court or in his section 2254 petition, were ineffective assistance for counsel's failure to exclude an in-court identification, and ineffective assistance for counsel's failure to offer evidence of a recorded telephone call in which Petitioner unequivocally denied that he stabbed the victim.  *Id.* ¶ 4 n.3.

> During cross-examination of the victim, the attorney brought out that the victim had deliberately injured himself in the past and, at the time of the incident, was depressed about the death of his mother. In addition, the attorney elicited testimony from the victim that, while he was being treated for the injuries resulting from the incident, hospital staff asked him whether he had stabbed himself. Manley's counsel was also able to get the victim to testify that he told the hospital staff that he had considered cutting his own throat earlier that night.
>
> The victim's medical records reveal six incidents of actual or threatened self-injury, including at least two incidents of stabbing occurring eight or nine years before the events that gave rise to these charges. The records also corroborate a pattern of self-injury at times of stress.
>
> Although the post-conviction court found that the records would have lent more weight to the defense theory of self-injury, it concluded that Manley did not meet his burden "to make at least an initial showing of ineffective assistance of counsel" and denied Manley's petition. In part, this was based on the court's finding that the location and nature of the stab wounds strongly suggested that the victim could not have inflicted all of them himself, and on its determination that the details of self-harm that counsel *had* elicited were relevant and useful.

*Id.* ¶¶ 5-9.  The Law Court concluded:

> In this case, where the court found that trial counsel's cross-examination of the victim regarding his recent statements and thoughts about self-harm were "more relevant, compelling and immediate than any of the historical incidents that could have been brought out through the medical records," we agree with the post-conviction court that Manley failed to show that the attorney did not provide reasonably effective assistance.

*Id.* ¶ 17.  The Law Court held that its decision was based on the first prong of the *Strickland* test:  "Because we find that Manley's attorney provided reasonably effective assistance, we do not reach the second prong of the *Strickland* analysis regarding prejudice."  *Id.* ¶ 18.

5

Petitioner timely filed a section 2254 petition on May 16, 2016.[5]

## II. DISCUSSION

### A. Legal Standards

In *Strickland*, the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697. Regarding the prejudice inquiry, a court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696.

A federal court does not conduct an independent review under *Strickland* when the state has adjudicated the claim; habeas relief is not available on claims that have been adjudicated on the merits in the state court, unless the state court adjudication was contrary

---

[5] Title 28 U.S.C. § 2244(d)(1) states in pertinent part: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of – (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Section 2244(d)(2) provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

to or an unreasonable application of federal law, or it involved an unreasonable determination of the facts.[6] *See* 28 U.S.C. § 2254(d).[7] "Since we are considering a habeas challenge, we are not actually tasked with deciding whether [the petitioner's] counsel's performance fell short of *Strickland*'s requirements; rather, the 'pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,'" pursuant to section 2254(d)(1). *Hensley v. Roden*, 755 F.3d 724, 736 (1st Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

"A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. If a state court applied the correct standard, i.e., the *Strickland* standard, "its conclusion that [counsel's] performance was not deficient constitutes an 'unreasonable application' of that law only if the court 'unreasonably applie[d] that principle to the facts of the prisoner's case.'" *Dugas v. Coplan*, 428 F.3d 317 (1st Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "'A state court's determination that a claim

---

[6] The final state court adjudication on the merits is the decision under review in a petitioner's section 2254 action. *Greene v. Fisher*, 565 U.S. 34, 40 (2011).

[7] Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)**   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)**   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Woods v. Etherton*, --- U.S. ---, ---, 136 S.Ct. 1149, 1151 (2016) (per curiam) (quoting *Harrington*, 562 U.S. at 101) (quotation marks omitted).  Claims of ineffective assistance of counsel are subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel.  *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

Petitioner asks the Court to apply a *de novo* standard of review to the prejudice prong of the *Strickland* analysis, and to determine that Petitioner was prejudiced by counsel's failure to obtain and present the victim's prior medical records. (Petition at 73.) Although the State's response to the section 2254 petition does not discuss explicitly Petitioner's argument for a *de novo* standard of review, the State apparently contends that, pursuant to section 2254(d)(1), a single deferential standard of review applies to the ineffective assistance claim. (Response, ECF No. 3 at 5-7.)

Supreme Court precedent provides for a *de novo* standard of review when evaluating a prong of the *Strickland* test not reached by any of the state courts:  "Because the state courts found the representation adequate, they never reached the issue of prejudice and so we examine this element of the *Strickland* claim *de novo* . . . ." *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (citation to record omitted) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).  In *Wiggins*, the Supreme Court noted: "In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis." 539 U.S. at 534.

In Petitioner's case, however, the trial court decided the prejudice prong of the *Strickland* analysis, and, therefore, neither *Rompilla* nor *Wiggins* is squarely on point. The First Circuit evidently has not yet decided whether, when the state appellate court did not reach an issue, the trial court's decision on an issue constitutes an adjudication on the merits subject to a deferential review under section 2254(d). "As our sister circuit has recognized, '[i]t is not clear whether an adjudication on the merits by a trial court, which is neither explicitly affirmed on the merits nor explicitly rejected by the appellate court, is sufficient to trigger [28 U.S.C. § 2254] review.'" *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 80 (1st Cir. 2009) (quoting *DeBerry v. Portuondo*, 403 F.3d 57, 68 (2d Cir. 2005)). In *Yeboah-Sefah*, the Court concluded that it need not decide the issue, because under either standard of review, the petitioner was not prejudiced.[8] *Id.*

While the standard of review on the prejudice issue is debatable, the Court is not necessarily required to resolve the debate in this case. A federal court is not required to analyze both prongs of the *Strickland* test. *See Strickland,* 466 U.S. at 697; *Hensley*, 755 F.3d at 738 & n.8 (concluding that the state court "did not unreasonably apply *Strickland* when it concluded that Hensley's attorney's performance was not deficient," and "[b]ecause (as we see it) the [state court's] determination regarding counsel's performance was not unreasonable, we need not get into *Strickland*'s prejudice component"). In the event the Court determines that the Law Court did not unreasonably apply the *Strickland*

---

[8] Other circuits are divided on the issue whether a *de novo* or a deferential standard of review applies. *Compare Thomas v. Clements*, 789 F.3d 760, 766-67 (7th Cir. 2015) (applying a *de novo* standard of review) with *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 545-46 & n.12 (3d Cir. 2014) (applying a deferential standard of review, but noting that under a *de novo* standard, the result would be the same).

9

analysis when it concluded counsel provided reasonably effective assistance, the Court does not have to address the prejudice issue and thus the standard of review on the prejudice prong of *Strickland* is irrelevant.

### B. Claim and Analysis

#### i. Whether the state court's determination that counsel's performance was not deficient was an unreasonable application of *Strickland*

Petitioner argues, pursuant to section 2254(d)(1), that the Law Court's determination that counsel was not deficient constitutes an unreasonable application of the performance prong of the *Strickland* analysis. (Petition at 69.) Petitioner characterizes counsel's failure to obtain and present the victim's older medical records as a "complete failure to investigate" the issue. (*Id.* at 59.) In support of his argument, Petitioner relies on counsel's post-conviction testimony (1) that counsel did not know what was contained in the victim's older medical records; (2) that counsel did not believe the victim's older medical records were relevant; and (3) that counsel answered affirmatively when the State asked whether he made a conscious decision not to subpoena the victim's prior medical records in order to prevent the State from suspecting that counsel may use the victim's psychiatric history. (Petition at 67-68; Post-conviction Tr. at 35.)

Petitioner argues the state court's application of *Strickland* is unreasonable because counsel's justification for not obtaining the older medical records lacks any merit. (Petition at 68-69.) Petitioner first argues counsel could not present the victim's history of self-harm unless counsel had reviewed the medical records. (*Id.* at 68.) Second, Petitioner contends that because "the discovery furnished by the State indicated that the victim had some

history of self-inflicted injury," *Manley*, 2015 ME 117, ¶ 6, 123 A.3d 219, the State already was aware that the victim's psychiatric history may be at issue and, therefore, counsel's concern about disclosing the defense theory to the State was unfounded. (Petition at 68.) Finally, Petitioner argues the prior medical records were important, because at trial the victim denied he caused his own injuries. (*Id.* at 69; Trial Tr. at 140.)

Petitioner's argument is unpersuasive. The state court's characterization of counsel's conduct as a decision not to conduct further investigation rather than, as Petitioner asserts, a complete failure to investigate the issue, is reasonable.[9] Counsel investigated and presented evidence on the issue at trial. Counsel elicited on cross-examination that the victim had injured himself deliberately in the past; that at the time of the incident, the victim was depressed; that when the victim was treated for the stab wounds, hospital staff asked him whether he had stabbed himself; and that the victim "told the hospital staff that he had considered cutting his own throat earlier that night." *Manley*, 2015 ME 117, ¶ 7, 123 A.3d 219. The Law Court's characterization of counsel's decision not to subpoena further medical records as a decision to forego further investigation, rather than a "complete failure" to investigate, is thus supported in the record. *Id.* ¶ 16. (Post-conviction Tr. at 34-35.)

---

[9] The Law Court did not consider counsel's decision a complete failure to investigate; rather, the Court characterized it as a strategic decision "'that further investigation would only produce more of the same . . . .'" *Manley*, 2015 ME 117, ¶ 16, 123 A.3d 219 (quoting 3 Wayne R. LaFave, *Criminal Procedure* § 11.10(c) (3d ed. 2007)). The Court added that counsel's decision not to pursue the victim's prior medical records does not necessarily indicate ineffectiveness, despite the fact that counsel might have been wrong. *Id.* The Court's decision was based on the Superior Court's finding that the victim's recent statements about self-harm were more relevant than historical incidents of self-harm. *Id.* ¶ 17.

The issue is whether the state appellate court's conclusion that counsel's decision not to conduct further investigation was not substandard constitutes a reasonable application of *Strickland*. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91 "In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. An unreasonable decision by counsel not to investigate further could support a claim of ineffective assistance. *See id.* In support of his claim, Petitioner relies primarily on the alleged unreasonableness of counsel's testimony that he decided not to request the additional medical records because he was concerned the request would alert the State to his trial strategy.

Although the Law Court noted counsel's testimony that he "was concerned that attempting to obtain the victim's treatment records would alert the State to his strategy," the Court's decision was not based on counsel's testimony that he wanted to prevent the State from learning his trial strategy, but was based on the Superior Court's finding that the victim's recent statements were more relevant than his history of self-harm. *Manley*, 2015 ME 117, ¶¶ 6, 17, 123 A.3d 219. Specifically, the Law Court wrote:

> In this case, where the court found that trial counsel's cross-examination of
> the victim regarding his recent statements and thoughts about self-harm were
> "more relevant, compelling and immediate than any of the historical

incidents that could have been brought out through the medical records," we agree with the post-conviction court that Manley failed to show that the attorney did not provide reasonably effective assistance.

*Id.* ¶ 17.[10]

In applying *Strickland*, therefore, the state appellate court did not rely on the reasonableness of counsel's concerns regarding the risk of disclosure of his trial strategy. Instead, the Court concluded counsel's performance was not substandard based on the relative relevance of victim's recent statements and the victim's history.

Petitioner cites several United States Supreme Court cases in his challenge to the state court's determination. The circumstances in this case, however, are significantly different from the circumstances in the cases upon which Petitioner relies.

In *Williams*, the Supreme Court concluded that counsel's performance at the petitioner's jury capital sentencing was deficient, because counsel failed to introduce "five categories of mitigating evidence," and counsel's "tactics . . . could not justify the omissions;" the Court also found that the petitioner was prejudiced by counsel's deficient performance.[11] *Williams*, 529 U.S. at 372-73 & n.4, 396-98. Counsel did not present

---

[10] The Court made its determination with knowledge of the medical history contained in the older records: "The victim's medical records reveal six incidents of actual or threatened self-injury, including at least two incidents of stabbing occurring eight or nine years before the events that gave rise to these charges. The records also corroborate a pattern of self-injury at times of stress." *Manley*, 2015 ME 117, ¶ 8, 123 A.3d 219. Petitioner does not argue, under 2254(d)(2), that the Court's decision was based on an unreasonable determination of the facts.

[11] Although *Williams v. Taylor*, 529 U.S. 362 (2000), as well as *Wiggins v. Smith*, 539 U.S. 510 (2003), *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Porter v. McCollum*, 558 U.S. 30 (2009), all involve ineffective assistance claims in jury capital sentencing cases, that fact alone does not distinguish them from Petitioner's case. *See Lafler v. Cooper*, 566 U.S. 156, 164-65 (2012) (noting, based on precedent, that the Sixth Amendment right to effective assistance of counsel applies during "pretrial critical stages," as well as at trial, on appeal, and in both capital and noncapital sentencing proceedings).

evidence that the petitioner was "borderline mentally retarded;" that his parents had been imprisoned for criminal neglect of the petitioner and his siblings; that his father had beaten him severely and repeatedly; that he had been returned to his parents' custody after they were released from prison; that he had received prison commendations; and that prison officials provided testimony that among prisoners, the petitioner was among the least likely to be violent, dangerous, or provocative. *Id.* at 395-96.

In *Wiggins,* counsel limited the investigation of mitigating evidence at sentencing. *Wiggins*, 539 U.S. at 521. Counsel told the jury the evidence would show petitioner had "a difficult life," but "[a]t no point did [counsel] proffer any evidence of petitioner's life history or family background." *Id.* at 515-16. Counsel had the presentencing investigation report and obtained records of the petitioner's foster placements; the Supreme Court noted that "the [state] court did not conduct an assessment of whether the decision to cease all investigation upon obtaining the PSI and [municipal social services] records actually demonstrated reasonable professional judgment." *Id.* at 527. The Court held that the state court's assumption that the investigation was adequate constituted an unreasonable application of *Strickland* and, therefore, the state court's deference to counsel's strategic decision was also unreasonable. *Id.* at 528. On *de novo* review of the prejudice prong of the *Strickland* test, the Court found prejudice. *Id.* at 534, 538.

In *Rompilla*, the Court determined counsel's performance at sentencing was deficient based on counsel's failure to examine the court file on the petitioner's prior conviction. The Court noted:

14

> The unreasonableness of attempting no more than they did was heightened by the easy availability of the file at the trial courthouse, and the great risk that testimony about a similar violent crime would hamstring counsel's chosen defense of residual doubt. It is owing to these circumstances that the state courts were objectively unreasonable in concluding that counsel could reasonably decline to make any effort to review the file. Other situations, where a defense lawyer is not charged with knowledge that the prosecutor intends to use a prior conviction in this way, might well warrant a different assessment.

545 U.S. at 389-90. The Court held that the state court determination that counsel was not deficient was unreasonable, given that the state court did not discuss the petitioner's prior case file at sentencing. *Id.* On *de novo* review of the prejudice prong of the *Strickland* test, the Court found prejudice. *Id.* at 390, 393.

In *Porter*, counsel failed to investigate or present evidence at sentencing of the petitioner's "abusive childhood, his heroic military service and the trauma he suffered because of it, his long-term substance abuse, and his impaired mental health and mental capacity." 558 U.S. at 33. "The sum total of the mitigating evidence was inconsistent testimony about Porter's behavior when intoxicated and testimony that Porter had a good relationship with his son." *Id.* at 32. On *de novo* review, the Supreme Court held that counsel's performance was deficient. *Id.* at 39-40. The Court also held that the state court's "decision that Porter was not prejudiced by his counsel's failure to conduct a thorough−or even cursory−investigation is unreasonable." *Id.* at 42.

Unlike in *Williams*, *Wiggins*, *Rompilla*, and *Porter*, in this case, counsel did not fail to present any evidence on an issue of consequence. To the contrary, counsel presented evidence the post-conviction court characterized as compelling, through the victim's own testimony, on the issue Petitioner maintains was critical. During counsel's cross-

examination of the victim, the victim revealed he had harmed himself in the past, that he had been depressed recently, and that he considered cutting his throat on the day of the incident involving Petitioner.

Petitioner's situation is also distinguishable from the First Circuit case of *Dugas* upon which Petitioner relies. In *Dugas*, the defendant was tried by jury and convicted of arson; following his unsuccessful appeal, the trial court rejected his claim of ineffective assistance, and the state supreme court denied review. *Dugas*, 428 F.3d at 319, 323, 325-26. The First Circuit concluded counsel's failure to consult an arson expert either to testify or to help counsel prepare for cross-examination of the state's experts, and counsel's failure to "conduct the research required to understand the principles of arson investigation on his own," *id.* at 323, constituted deficient performance, given "the inescapable need for expert consultation" and the lack of any legitimate reason for the failure to engage an expert. *Id.* at 331.

> We cannot conclude that . . . [counsel's] failure to thoroughly investigate the "not arson" defense was justified by a tactical decision to pursue the defense that another person caused the fire or his overconfidence in that alternative defense. A tactical decision to pursue one defense does not excuse failure to present another defense that would bolster rather than detract from the primary defense.

*Id.* (quotation marks and alteration omitted). The Court noted that counsel told the jury that he would demonstrate the problems with the state's expert testimony, but counsel's "cross-examination demonstrated a clear lack of understanding of arson investigation and the principles invoked by the state's many expert witnesses," and counsel "was hopelessly unprepared to challenge the state's expert witnesses." *Id.* In *Dugas*, the First Circuit

16


concluded that "the state court's decision rested on an unreasonable determination of fact and an unreasonable application of *Strickland* to the facts."[12] *Id.* at 332.

In *Dugas*, counsel did not and could not justify on any rational strategic basis the decision not to engage an arson expert to assist in the defense of the case. In essence, counsel in *Dugas* was unable to present an effective challenge to the state's expert evidence. Here, counsel did not forego the presentation of an effective defense. Counsel presented evidence regarding the victim's history and state of mind on the day of the incident, which evidence the post-conviction court determined was more relevant and compelling to the defense.

In sum, the Law Court's determination that counsel provided reasonably effective assistance represents a reasonable application of *Strickland*. Petitioner's arguments to the contrary are unconvincing.

---

[12] The First Circuit noted the district court's observation that counsel may have believed, incorrectly, "that a non-testifying defense expert might have to be made available to the state." *Dugas v. Coplan*, 428 F.3d 317, 326 (1st Cir. 2005). The district court "found the state court's reliance on that incorrect understanding to be unreasonable." *Id.* The First Circuit concluded that had counsel undertaken a risk-benefit analysis, the "'perils' could not have outweighed the benefits of consulting an expert under any rational calculus." *Id.* at 333. On that basis, the Court concluded that the state court's findings of fact to the contrary were incorrect by clear and convincing evidence, and "the state court's conclusion was an unreasonable application of *Strickland* within the meaning of § 2254." *Id.* at 333-34.

In *Dugas*, the state court did not reach the issue of prejudice, and therefore, the First Circuit reviewed the issue *de novo*. *Id.* at 343. The First Circuit concluded the district court erred when it determined the petitioner was not prejudiced, and it vacated the district court's grant of summary judgment. *Id.* at 342. The Court noted that "[t]he case for prejudice here is close; we do not conclude that there was prejudice, but only that, in the circumstances of this appeal, Dugas has raised sufficient doubts about the outcome to avoid summary judgment." *Id.* at 343. On that basis, the Court remanded the case for more evidentiary development. *Id.* On remand, the district court held an evidentiary hearing and concluded that the evidence was "not persuasive enough to meaningfully undermine the government's case against Dugas and affect the outcome of the trial," and therefore counsel's "deficient representation did not prejudice Dugas within the meaning of *Strickland*." *Dugas v. Coplan*, 506 F.3d 1, 13 (1st Cir. 2007). The First Circuit noted that the prejudice inquiry was "fact-dominated," and it affirmed on clear error review. *Id.* at 8, 13.

### ii.  Whether Petitioner was prejudiced

Petitioner asks the Court to apply a *de novo* standard of review to the issue of prejudice, and argues he was prejudiced by counsel's failure to obtain and present the victim's prior medical records. (Petition at 70.)  Alternatively, he argues that if the Court reviews the Superior Court's decision on the issue of prejudice under the deferential standard set forth in section 2254(d)(1), the decision was an unreasonable application of *Strickland* because the Superior Court erroneously applied an outcome-determinative test of prejudice. (*Id.* at 17-19.)

Because the Law Court's determination that counsel's performance was not substandard was based on a reasonable application of *Strickland*, the Court is not required to examine the prejudice issue.  However, even if the Court were to conclude counsel's performance was substandard, the record would not support of finding of prejudice, regardless of the standard of review.

Whether a deferential review under section 2254(d)(1) is appropriate in this case, or whether the Court's review is *de novo*, the issue of prejudice must be informed by the state court's factual findings.  Any state court factual findings that bear upon the *Strickland* prejudice analysis must be accorded deference.  *See Pike v. Guarino*, 492 F.3d 61, 68 (1st Cir. 2007) (holding that 28 U.S.C. § 2254(e)(1) applies to state court factual findings in a claim on *de novo* review). "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Petitioner does not contest the post-conviction court's factual findings. (Petition at 14.) The state court found (1) that counsel cross-examined the victim regarding his past history of self-injury; (2) that the evidence counsel elicited at trial regarding the victim's recent medical history was more relevant than the victim's historical incidents of self-injury; and (3) that the location and nature of the victim's injuries "suggested strongly" that they were not all self-inflicted. (Post-conviction Decision and Judgment at 6-8.)

The state court's post-conviction findings preclude a determination that Petitioner was prejudiced by counsel's failure to obtain the victim's medical records of prior incidents of self-injury. To the extent the past history was significant, the trial evidence included evidence that the victim had injured himself deliberately in the past. The jury also heard the recent evidence (e.g., the victim had been depressed and had considered hurting himself on the day of the incident with Petitioner) the post-conviction court found was more relevant and compelling, yet the jury was evidently unconvinced the victim caused the injuries in this case. The jury's determination is consistent with the post-conviction court's finding that the location and nature of the injuries strongly suggested that all of the injuries could not have been self-inflicted, which finding suggests there is not a reasonable probability the outcome of Petitioner's trial would have been different if additional evidence of Petitioner's self-injurious conduct had been presented.

Overall, the "totality of the evidence," as reflected by the factual findings, establishes that this is not a case in which the verdict was "only weakly supported by the record." *Strickland*, 466 U.S. at 695-96. On a claim of ineffective assistance of counsel, the focus of the inquiry is whether Petitioner had a fair trial. *See id.* at 696. Here, counsel's

failure to obtain or introduce the victim's older medical records did not render Petitioner's trial fundamentally unfair. *See id.* Accordingly, even if the Court were to determine the state court unreasonably applied *Strickland* when it concluded counsel's performance was not substandard, Petitioner cannot prove prejudice and thus cannot prevail on his section 2254 petition.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases, and I recommend the Court deny relief on Petitioner's petition for habeas relief under 28 U.S.C. section 2254, and dismiss the petition. I also recommend the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of February, 2017.